## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

ANGELINA M. FEESAGO,
             Appellant,

       v.

DEPARTMENT OF DEFENSE,
             Agency.

DOCKET NUMBER
SF-0432-16-0458-I-1

DATE: August 10, 2022

## THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Angelina M. Feesago</u>, Twentynine Palms, California, pro se.

Michael Sandburg, Fort Lee, Virginia, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## FINAL ORDER

¶1      The agency has filed a petition for review of the initial decision, which reversed its decision to demote the appellant for unacceptable performance under 5 U.S.C. chapter 43. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order to supplement the administrative judge's findings concerning the agency's failure to afford the appellant a reasonable opportunity to improve her performance, we AFFIRM the initial decision.

## BACKGROUND

¶2    The appellant was employed as a GS-07 Produce Department Manager with the Defense Commissary Agency until the agency demoted her to a GS-04 Store Associate for unacceptable performance in the four critical elements of her position. Initial Appeal File (IAF), Tab 4 at 11-24. The agency placed the appellant on a 90-day performance improvement plan (PIP), beginning August 8, 2015. IAF, Tab 21 at 47-56. After determining that the appellant's performance remained unsatisfactory in all four critical elements, the agency issued her a notice of proposed performance-based demotion on January 23, 2016, IAF, Tab 4 at 38-51, and then demoted her, effective May 1, 2016, *id.* at 9, 23.

¶3    The appellant timely appealed her demotion to the Board. IAF, Tab 1. She also raised affirmative defenses of race discrimination, whistleblower reprisal, and harmful procedural error. IAF, Tab 38. After the appellant withdrew her request for a hearing, IAF, Tab 39, the administrative judge issued

an initial decision based on the written record, reversing the demotion action. IAF, Tab 49, Initial Decision (ID). The administrative judge found that the agency's performance standards for critical elements 4 and 5 were invalid because they were not precise, specific, and objective. ID at 13. In particular, she found that the agency appeared to use "exceptions" or "discrepancies" to rate the appellant's performance, yet there was no stated standard as to how many exceptions could occur before an employee would be deemed to have failed to meet the standard. ID at 10. Instead, the standard or "target measurement" appeared to be tied to a sales report, but it was unclear how the exceptions were captured by the target measurement. ID at 10-13. Although the administrative judge determined that critical elements 1 and 2 were valid, she determined that the agency failed to afford the appellant a reasonable opportunity to improve her performance in those elements due to staffing issues during the PIP. ID at 17-21. The administrative judge further found that the appellant failed to prove her affirmative defenses. ID at 21-37.

¶4        The agency has filed a petition for review in which it asserts that the administrative judge erred in finding that the appellant was not afforded a reasonable opportunity to improve her performance. Petition for Review (PFR) File, Tab 1.[2] The appellant has not challenged the administrative judge's findings that she failed to prove her affirmative defenses and has not responded to the agency's petition for review.

---

[2] With its petition for review, the agency failed to include a certification that it complied with the interim relief order. *See* 5 C.F.R. § 1201.116(a). However, in light of our decision to deny the agency's petition for review on the merits and thereby order the agency to provide full relief consistent with law, the issue of the agency's compliance with the interim relief order is moot. *See Coffey v. U.S. Postal Service*, 77 M.S.P.R. 281, 286 (1998).

## DISCUSSION OF ARGUMENTS ON REVIEW

¶5        In a performance-based action taken under chapter 43, an agency must establish by substantial evidence[3] that: (1) the Office of Personnel Management (OPM) approved its performance appraisal system;[4] (2) the agency communicated to the appellant the performance standards and critical elements of her position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1);[5] (4) the agency warned the appellant of the inadequacies of her performance during the appraisal period and gave her a reasonable opportunity to improve; and (5) the appellant's performance remained unacceptable in at least one critical element.[6] *White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 5 (2013). On review, the agency does not challenge the administrative judge's findings that

---

[3] Substantial evidence is the "degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree." 5 C.F.R. § 1201.4(p).

[4] The agency has the burden of proving that OPM has approved its performance appraisal system if the appellant specifically raises such a challenge. *Sanders v. Social Security Administration*, 114 M.S.P.R. 487, ¶ 11 n.2 (2010). Here, the appellant did not raise this issue. ID at 5.

[5] This section used to be codified at 5 U.S.C. § 4302(b)(1). During the pendency of this appeal, the National Defense Authorization Act for Fiscal Year 2018 (NDAA for 2018), Pub. L. No. 115-91, 131 Stat. 1283, was signed into law on December 12, 2017. Section 1097(d)(1) of the NDAA for 2018 redesignated subsection 4302(b) of title 5 as subsection 4302(c). 131 Stat. at 1619. Such change has no impact on the disposition of this appeal. We also have reviewed the other relevant legislation enacted during the pendency of this appeal and have concluded that it does not affect the outcome of the appeal.

[6] During the pendency of the petition for review in this case, the U.S. Court of Appeals for the Federal Circuit held in *Santos v. National Aeronautics & Space Administration*, 990 F.3d 1355 (Fed. Cir. 2021), that, in addition to the five elements of the agency's case set forth above, the agency also must justify the institution of a PIP by proving by substantial evidence that the appellant's performance was unacceptable prior to the PIP. *Santos*, 990 F.3d at 1360-61. Although the Federal Circuit's decision in *Santos* applies to all pending cases, including this one, regardless of when the events took place, *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 16, here, because the agency failed to satisfy all of the above enumerated elements, we need not consider the appellant's pre-PIP performance. Moreover, the appellant's affirmative defenses are not at issue on review.

the performance standards for critical elements 4 and 5 were invalid. Thus, the sole issue that we will address is whether the agency afforded the appellant a reasonable opportunity to improve her performance in critical elements 1 and 2.

<u>The administrative judge properly found that the agency failed to afford the appellant a reasonable opportunity to improve her performance.</u>

¶6 An employee is entitled to a reasonable opportunity to demonstrate acceptable performance, which includes assistance from the agency in improving unacceptable performance. 5 U.S.C. § 4302(c)(5)-(6); 5 C.F.R. § 432.104. Although there is no mechanical requirement regarding the form of this assistance, in determining whether an agency has afforded an employee a reasonable opportunity to demonstrate acceptable performance, relevant factors include the nature of the duties and responsibilities of the employee's position, the performance deficiencies involved, and the amount of time which is sufficient to enable the employee to demonstrate acceptable performance. *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 32 (2010); *Gjersvold v. Department of the Treasury*, 68 M.S.P.R. 331, 336 (1995).

¶7 The administrative judge found that the agency failed to show that it afforded the appellant a reasonable opportunity to improve because lower staffing levels occurred throughout the PIP period, requiring the appellant to perform additional duties beyond her normal workload. ID at 21. In particular, the administrative judge found that prior to the PIP, total man hours in the produce department, not including the appellant's hours, varied between 216 and 248, or 5.4 to 6.2 full-time equivalents (FTEs), but that during the PIP, total man hours varied between only 168 and 198, or 4.2 to 5 FTEs. ID at 19-20. Further, she found that one employee was terminated on August 7, 2015, the day before the appellant's PIP commenced. ID at 19. She also found that two employees were transferred out of the produce department on August 23, 2015, during the PIP period, and one employee was transferred into the produce department but required training during the PIP period. ID at 18.

¶8 On review, the agency does not dispute these findings or that its staffing in the produce department generally was lower during the appellant's PIP period, and we discern no error with the administrative judge's analysis. The agency, however, contends that there was "no true staffing deficiency" because agency documentation establishes that the produce department was only authorized to have 5 FTEs. PFR File, Tab 1 at 15-16. Despite this standard, the agency has offered no explanation as to why, prior to the PIP, the produce department was staffed with between 6.4 to 7.2 FTEs, including the appellant's full-time hours. We agree with the administrative judge that the drop in staffing during the PIP effectively imposed a higher level of performance on the appellant than previously was required of her, and thus, the agency did not afford her a reasonable opportunity to improve.

¶9 On review, the agency argues that the administrative judge erred in finding that low staffing levels required the appellant to perform additional duties not expected of her because her job description states that she was responsible for either directing or personally performing certain duties. PFR File, Tab 1 at 11-13. We find such an argument unavailing. While it may be true that the appellant may have been expected to perform some duties personally, as opposed to directing employees to perform them, it is undeniable that with less staff she would have been required to personally perform more duties. Thus, we agree with the administrative judge's reasonable finding, that the appellant's workload increased during the PIP.

¶10 Next, the agency argues that the appellant's position description indicates that she is responsible for ensuring adequate coverage of her department and that she was responsible for the low staff levels because she inappropriately granted employees leave. PFR File, Tab 1 at 13-14. It does not appear that the appellant had control over the hiring or firing of produce department employees or staffing levels generally. IAF, Tab 21 at 37, Tab 26 at 56, 78, Tab 37 at 5. Regarding scheduling, the record reflects that, during the month of September, the produce

department was short staffed because, in addition to the termination of one employee and the transfer of two other employees out of the produce department, one employee was on bereavement leave for part of the month and another employee was on light duty for 3 weeks. IAF, Tab 11 at 119, Tab 38 at 35.

¶11 Despites its contention that the appellant was responsible for the lack of coverage, the agency has not explained how it was improper for the appellant to grant an employee bereavement leave to make funeral arrangements following the death of his grandmother. OPM regulations permit an employee to use up to 104 hours of sick leave each year for family care or bereavement. 5 C.F.R. § 630.401(a)(4), (b). Additionally, an email from the appellant's supervisor corroborates that the other employee was on light duty due to his medical condition and was required to submit appropriate medical documentation before he could return to duty. IAF, Tab 11 at 117.

¶12 Finally, the agency asserts that the administrative judge erred in relying on what it characterizes as biased emails that the appellant sent to herself during the PIP, documenting staffing shortages and her requests for assistance. PFR File, Tab 1 at 5, 13. We discern no error in the administrative judge's reliance on such contemporaneous records, which are corroborated by the record. For example, in an email dated September 10, 2015, the appellant wrote,

> September has been a rough month for the Produce department. One employee had a death in the family, and another employee had a back injury that has put him out for 3 weeks. We have been working with 3 employees, one of which is fairly new, starting in the Produce Department on August 23, 2015. For the past few weeks I open Produce with 1 employee.

IAF, Tab 38 at 35. She added that her "employees are overwhelmed and exhausted." *Id.* at 36. Such assertions are corroborated by emails between the appellant and her supervisor. IAF, Tab 11 at 117, 119. Additionally, a PIP meeting memoranda documents that the appellant requested to forego the weekly

counseling meeting on September 12, 2015, because her department was short staffed, and she needed to stay and fill the void. *Id.* at 37.

¶13     In addition to the staffing issues, having reviewed the documentary evidence, we find that the agency failed to show that it adequately warned the appellant of her performance deficiencies in critical elements 1 and 2 and did not provide her with clear guidance as to how to improve her performance during the PIP.   As set forth below, the record reflects that the nature of the appellant's performance deficiencies regarding critical elements 1 and 2 was unclear and changed over time.

¶14     Element 1 of the appellant's performance standards sets forth the following general requirements:

> 1a.   Equal Employment Opportunity (EEO):   Recruits, retains, and develops the talent needed to achieve a high quality, diverse workforce that reflects the nation, with the skills needed to accomplish organizational performance objectives while supporting workforce diversity, workplace inclusion, and equal employment policies and programs.   Fosters a culture in which individuals interact and support each other as a means of contributing to high performance in the organization.   Maintains a work environment free of discrimination and sexual harassment and facilitates cooperation and teamwork.
>
> 1b.   Human Capital Resources:   Effectively attracts and retains a high caliber workforce using workforce planning and forecasting tools (on board strengths versus future demands for filing [sic] positions) and in accordance with measurements identified in organizational staffing and hiring goals.   Ensures successful transition and retention into the Federal Service by providing opportunities for orientation and tools for enabling employees to successfully perform during the required probationary period. Identifies current and future position requirements to ensure recruiting is appropriately focused and timely to produce high quality candidate pools.   Acts responsibly and timely on all hiring decisions.  Identifies and ensures completion of training necessary to develop staff and meet operational needs using the most cost effective sources.   Ensures that award allocations, to include performance based awards, are in compliance with guidance established by [the Office of Management and Budget] and OPM.

> Ensures subordinate employee performance plans are aligned with the organization's mission and goals, that employees receive constructive feedback, and that employees are realistically appraised against clearly defined and communicated performance standards. Holds employees accountable for appropriate levels of performance and conduct. Ensures that appropriate disciplinary/performance related actions are initiated in a timely manner throughout area(s) of responsibility. Fosters a positive working relationship with the bargaining unit to minimize substantiated grievances.

IAF, Tab 45 at 5.

¶15      An agency may give content to an employee's otherwise valid performance standards by informing her of specific work requirements through written instructions, information concerning deficiencies and methods of improving performance, memoranda describing unacceptable performance, and responses to her questions concerning performance. *Baker v. Defense Logistics Agency*, 25 M.S.P.R. 614, 617 (1985), *aff'd*, 782 F.2d 1579 (Fed. Cir. 1986). Here, however, the agency did not do so. Rather, the PIP, PIP meeting notes, memorandum concerning the decision to demote the appellant, and demotion notices reflect that the appellant's identified performance deficiencies continuously changed over time without notice.

¶16      Regarding critical element 1, the PIP memorandum cites to four examples of the appellant's deficient performance, which related solely to not properly scheduling employees (e.g., failing to rotate employees' weekends off, failing to properly schedule part-time employees, improperly scheduling an employee listed as 32 hours for 40 hours, and making verbal modifications to the schedule without revising the master schedule). IAF, Tab 21 at 51. Having identified scheduling issues as the sole performance problem under critical element 1, the PIP memorandum nonetheless instructed the appellant that, to improve her performance to the fully successful level in critical element 1, she must do the following:

> Lead by example by: Support Management Directives, Ensure staff is trained on IAW Directives & Guidelines to identify Produce and

discuss effectively the produce products for sale, Maintain confidentiality. Scheduling Staff: Ensure staff is fully maximized, schedule sufficient staff throughout the business day to ensure sales needs are met, conduct Monthly Spot Checks of department, hold staff accountable for appropriate level of performance and conduct, ensure disciplinary and performance related actions are initiated in a timely manner, foster a positive working environment, and hold monthly staff meetings.

*Id.* at 51-52.

¶17 Documents memorializing the appellant's performance during the PIP identify new performance deficiencies in critical element 1.[7] These largely relate to failing to conduct inventory, price verifications, and produce department checklists or to order cut-resistant gloves. IAF, Tab 17 at 27, Tab 13 at 5, Tab 11 at 17, Tab 7 at 14, Tab 10 at 14, Tab 9 at 8, Tab 6 at 35, Tab 28 at 67. However, duties related to ordering, receiving, storing, processing, and pricing of produce correspond to critical element 4, which the administrative judge found was invalid.[8] IAF, Tab 45 at 6.

¶18 Other documents concerning the PIP identify other instances in which the appellant's performance related to critical element 1 was deficient, such as failing to file 2016 performance plans in the satellite personnel folders, allowing an employee to report to duty early on one occasion, not providing management with a modified duty schedule, failing to complete appropriate training forms to acquire access for payroll processing, and various timecard issues. IAF, Tab 13 at 5, Tab 11 at 17, Tab 10 at 14, Tab 28 at 66. However, the appellant was not advised in the PIP notice of any performance deficiencies in these categories. Although she was instructed to ensure staff was fully maximized and sufficient to

---

[7] During the PIP, the appellant met with her supervisor on eight occasions. IAF, Tab 18 at 29, Tab 17 at 30, Tab 13 at 7, Tab 11 at 33, Tab 10 at 27, Tab 9 at 14, Tab 6 at 43, Tab 28 at 76.

[8] On various occasions, the agency identified conducting price verifications and produce department checklists as pertaining to critical elements 1, 4, or 5. IAF, Tab 28 at 73, Tab 6 at 35, 38-39, Tab 9 at 8, 12, Tab 10 at 14, 22, Tab 11 at 20, 22, 28, Tab 13 at 5-6, Tab 17 at 27-28, Tab 18 at 28.

ensure sales needs were met, none of these performance deficiencies appear to reflect a failure to meet such standards, nor did the PIP notice advise the appellant that to improve her performance in critical element 1 she needed to take any actions regarding employee performance plans or payroll duties. Similarly, the performance deficiencies in critical element 1 supporting the appellant's demotion largely relate to job duties corresponding to critical element 4 or to job duties for which she was not provided notice of her deficiencies. IAF, Tab 4 at 12-13, 26, 39-40. Thus, we find that the record does not show that the appellant was adequately informed of her performance deficiencies regarding critical element 1 or that the agency assisted her in improving such deficiencies.

¶19    Regarding critical element 2, Customer Care, the appellant's performance standards set forth the following general requirements: "Effectively identifies and assesses customer requirements. Effectively manages customer expectations and addresses questions and concerns. Provides timely, flexible, and responsive service to internal and external customers, promoting a positive Agency image and improve customer relations in order to contribute towards sales growth." IAF, Tab 45 at 6. The PIP identified instances in which the appellant's performance was deficient in this element because she failed to adequately staff her department, employees were not visible on the sales floor, and customers had complained about the produce quality and availability. IAF, Tab 21 at 52-53. The PIP informed the appellant that to improve her performance to the fully successful level she had to do the following: "You must ensure you explain DeCA Directives/Guidelines effectively to both internal and external customers, promote a positive agency image/positive working environment." *Id.* at 53.

¶20    Memoranda concerning the appellant's performance during the PIP reflect that performance issues regarding element 2 were not frequently identified or discussed, and issues discussed under this element often did not relate to identified performance deficiencies. For example, the appellant's supervisor documented that she observed employees were not on the sales floor on numerous

occasions during the PIP. IAF, Tab 11 at 21, Tab 10 at 15, Tab 9 at 8. Yet, the record does not reflect that she ever discussed this issue with the appellant. The only performance deficiencies cited under critical element 2 that actually were discussed with the appellant were an incident in which no employee was available when a customer tried to pick up a fruit tray and an incident in which the appellant failed to contact an individual concerning the agency's participation in a health fair as instructed. IAF, Tab 11 at 34.

¶21 The agency determined that the appellant's performance remained deficient in this element during the PIP because the produce department continued to be dirty, product was not stocked, supplies such as plastic bags were not stocked, the fruit tray was not able to be picked up, and employees were not on the sales floor on numerous occasions. IAF, Tab 4 at 26. However, with the exception of the fruit tray incident, the record does not reflect that any of these issues were ever mentioned to the appellant in the PIP discussions concerning critical element 2. Rather, on the occasions when issues under critical element 2 were discussed, they related to issues such as staff complacency, the appellant's comments, emails, and interactions with her employees, the transfer of an employee to another department, the duty schedule for an employee while training other employees, and providing copies of performance plans to employees. IAF, Tab 17 at 32, Tab 10 at 29.

¶22 Overall, the record reflects that, during the PIP, the appellant's supervisor focused on conducting "walk throughs" of the produce department and meticulously documenting instances in which she found that the appellant's performance was deficient instead of offering her assistance or suggestions as to how to improve her performance, particularly regarding critical element 2.

Thus, we find that the record does not show that the PIP meetings directly assisted the appellant in improving her performance.[9]

¶23     Accordingly, we affirm the initial decision, reversing the appellant's demotion.

## ORDER

¶24     We ORDER the agency to reinstate the appellant to her prior position of Produce Department Manager, effective May 1, 2016.  *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984).   The agency must complete this action no later than 20 days after the date of this decision.

¶25     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision.  We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order.  If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶26     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it has taken to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

---

[9] The administrative judge found that the appellant's supervisor provided extensive feedback as to how the appellant might improve her performance.  ID at 20.  While we agree that extensive feedback was generally provided during the PIP meetings, as discussed herein, it was often unclear how such feedback related to the appellant's specific performance deficiencies identified under critical elements 1 and 2 or how she might improve her performance in those elements.

¶27    No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶28    For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING
### YOUR RIGHT TO REQUEST
### ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set forth at title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[10]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

---

[10] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

(2) **Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[11]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[11]  The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD: /s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.



| | **DEFENSE FINANCE AND ACCOUNTING SERVICE**<br>**Civilian Pay Operations** |
|---|---|

# DFAS BACK PAY CHECKLIST

The following documentation is required by DFAS Civilian Pay to compute and pay back pay pursuant to 5 CFR § 550.805.  Human resources/local payroll offices should use the following checklist to ensure a request for payment of back pay is complete.  Missing documentation may substantially delay the processing of a back pay award.  **More information may be found at: https://wss.apan.org/public/DFASPayroll/Back%20Pay%20Process/Forms/AllItems.aspx.**

**NOTE:  Attorneys' fees or other non-wage payments (such as damages) are paid by vendor pay, not DFAS Civilian Pay.**

☐  1) Submit a **"SETTLEMENT INQUIRY - Submission"** Remedy Ticket.  Please identify the specific dates of the back pay period within the ticket comments.

Attach the following documentation to the Remedy Ticket, or provide a statement in the ticket comments as to why the documentation is not applicable:

☐  2) Settlement agreement, administrative determination, arbitrator award, or order.

☐  3) Signed and completed "Employee Statement Relative to Back Pay".

☐  4) All required SF50s (new, corrected, or canceled).  **\*\*\*Do not process online SF50s until notified to do so by DFAS Civilian Pay.\*\*\***

☐  5) Certified timecards/corrected timecards.  **\*\*\*Do not process online timecards until notified to do so by DFAS Civilian Pay.\*\*\***

☐  6) All relevant benefit election forms (e.g. TSP, FEHB, etc.).

☐  7) Outside earnings documentation.  Include record of all amounts earned by the employee in a job undertaken during the back pay period to replace federal employment.  Documentation includes W-2 or 1099 statements, payroll documents/records, etc.  Also, include record of any unemployment earning statements, workers' compensation, CSRS/FERS retirement annuity payments, refunds of CSRS/FERS employee premiums, or severance pay received by the employee upon separation.

**Lump Sum Leave Payment Debts:**  When a separation is later reversed, there is no authority under 5 U.S.C. § 5551 for the reinstated employee to keep the lump sum annual leave payment they may have received.  The payroll office must collect the debt from the back pay award.  The annual leave will be restored to the employee.  Annual leave that exceeds the annual leave ceiling will be restored to a separate leave account pursuant to 5 CFR § 550.805(g).



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a. Employee name and social security number.
    b. Detailed explanation of request.
    c. Valid agency accounting.
    d. Authorized signature (Table 63).
    e. If interest is to be included.
    f. Check mailing address.
    g. Indicate if case is prior to conversion.  Computations must be attached.
    h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected (if applicable).

Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement (if applicable).
2. Copies of SF-50s (Personnel Actions) or list of salary adjustments/changes and amounts.
3. Outside earnings documentation statement from agency.
4. If employee received retirement annuity or unemployment, provide amount and address to return monies.
5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)
6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.
7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases:  (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a. Must provide same data as in 2, a-g above.
    b. Prior to conversion computation must be provided.
    c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.